AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

v.

**Deshema Clark**

_____

*Defendants*

Case No. 23-MJ- 5017

*[Court seal stamp: UNITED STATES DISTRICT COURT, JAN 20 2023, MARY C. LOEWENGUTH, CLERK, WESTERN DISTRICT OF NY]*

## CRIMINAL COMPLAINT

I, Christopher Dailey, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Beginning in or about September 15, 2019, the exact date being unknown, and continuing until on or about October 9, 2019, in the County of Erie, in the Western District of New York, and elsewhere, the defendant, **Deshema Clark**, having knowledge of the actual commission of a felony (or felonies) cognizable by a court of the United States, to wit, narcotics conspiracy, murder while engaged in a narcotics conspiracy, discharge of a firearm, conspiracy to obstruct justice, obstruction of justice, and other felonies committed by DeAndre Wilson, did conceal the same by making false, fraudulent, and fictitious statements, and did not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, and in a matter within the jurisdiction of the executive branch of the Government of the United States, did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations to Special Agents of the Federal Bureau of Investigation.

All in violation of Title 18, United States Code, Sections 4 and 1001(a)(2).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

_____
*Complainant's signature*

**CHRISTOPHER DAILEY**
**SPECIAL AGENT**
**FEDERAL BUREAU OF INVESTIGATION**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 20, 2023

_____
*Judge's signature*

City and State:  Buffalo, New York

**HONORABLE MICHAEL J. ROEMER**
**UNITED STATES MAGISTRATE JUDGE**
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK   )
COUNTY OF ERIE       )     SS:
CITY OF BUFFALO      )

     I, **CHRISTOPHER DAILEY**, being duly sworn, depose and state the following:

## INTRODUCTION

    1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI"), United States Department of Justice. As such, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

    2.    I have served as an FBI Special Agent since July 2015. As an FBI Special Agent ("SA"), I am responsible for investigating violations of federal criminal law, including 18 U.S.C. § 4 [misprision of a felony] and 18 U.S.C. § 1001(a)(2) [making false statements]. During my career with the FBI, I have participated in investigations involving, among other things, violent crime, drug trafficking networks, organized crime and racketeering influenced corrupt organizations ("RICO"), street gangs, obstruction of justice, and perjury. In addition, I have had the opportunity to work with several other FBI agents and law enforcement agents and officers of varying experience levels, who have investigated drug trafficking networks, firearm offenses, violent crimes, and offenses involving concealment, obstruction of justice,

and false statements.  My investigative experience detailed herein, the experience of other law enforcement officers involved in the investigation, and the information developed through the trial conducted in United States District Court for the Western District of New York, United States v. DeAndre Wilson, Case No. 19-CR-155-EAW, serve as the basis for the opinions and conclusions set forth herein.

3.    This affidavit is submitted in support of a criminal complaint charging DESHEMA CLARK ("CLARK") with violations of 18 U.S.C. §§ 4 [misprision of a felony] and 1001(a)(2) [making false statements].

4.    I am familiar with the facts and circumstances of this investigation, such familiarity having been gained through my personal knowledge based upon my participation in this investigation; statements by and/or reports provided to me by law enforcement; witness interviews; the interview of CLARK; review of video footage; review of CLARK's cell phone extraction data; review of cellular phone call detail records and other cell phone extraction reports; Google and cell tower location data analysis conducted by FBI Cellular Analysis Survey Team ("CAST") SA John Orlando; evidence obtained pursuant to the execution of federal search warrants; and other information developed through the trial conducted in United States District Court for the Western District of New York, United States v. DeAndre Wilson, Case No. 19-CR-155-EAW.

5.    Because this affidavit is being submitted for a limited purpose, that is, to establish probable cause that CLARK committed the specified offenses, I have not presented all of the facts of this investigation to date.

## RELEVANT STATUTES

6.      Title 18, United States Code, Section 4 makes it a federal crime for a person who, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States.

7.      Title 18, United States Code, Section 1001(a)(2) makes it a federal crime to "knowingly and willfully make[] any materially false, fictitious, or fraudulent statement or representation" "in any matter within the jurisdiction of the executive branch . . . of the Government of the United States." The FBI is part of the executive branch of the Government of United States.

## FACTS ESTABLISHING PROBABLE CAUSE

8.      On November 3, 2022, DeAndre Wilson ("Wilson") was convicted in United States District Court for the Western District of New York of 15 counts following trial in United States v. DeAndre Wilson, Case No. 19-CR-155-EAW, including:

**Count 1**- Narcotics Conspiracy and the jury made specific findings that the offense involved 5 kilograms or more of cocaine, 1 kilogram or more of heroin, and 100 kilograms or more marijuana that was foreseeable to Wilson;

**Count 3**- Hobbs Act Robbery;

**Count 4**- Murder While Engaged in a Narcotics Conspiracy regarding the murders of Miguel Anthony Valentin-Colon, Nicole Marie Merced-Plaud, and Dhamyl Roman-Audiffred;

**Count 5**- Discharge of a Firearm in Furtherance of a Crime of Violence and Drug Trafficking Crimes and the jury made specific findings that Wilson engaged in the commission of the predicate crimes of Narcotics Conspiracy, Hobbs Act Robbery, and Murder While Engaged in a Narcotics Conspiracy;

**Count 6**- Discharge of a Firearm Causing Death in Furtherance of a Crime of Violence and Drug Trafficking Crimes for the murder of Miguel Anthony-Valentin-Colon and the jury made specific findings that Wilson engaged in the commission of the predicate crimes of Narcotics Conspiracy, Hobbs Act Robbery, and Murder While Engaged in a Narcotics Conspiracy;

**Count 7**- Discharge of a Firearm Causing Death in Furtherance of a Crime of Violence and Drug Trafficking Crimes for the murder of Nicole Marie Merced-Plaud and the jury made specific findings that Wilson engaged in the commission of the predicate crimes of Narcotics Conspiracy, Hobbs Act Robbery, and Murder While Engaged in a Narcotics Conspiracy;

**Count 8**- Conspiracy to Obstruct Justice;

**Count 9**- Obstruction of Justice;

**Count 10**- Obstruction of Justice;

**Count 11**- Conspiracy to Use Fire to Commit a Felony;

**Count 12**- Use of Fire to Commit a Felony;

**Count 13**- Use of Fire to Commit a Felony;

**Count 14**- Conspiracy to Damage and Destroy a Vehicle Used in Interstate Commerce by Fire;

**Count 15**- Damaging and Destroying a Vehicle Used in Interstate Commerce by Fire; and,

**Count 17**- Possession with Intent to Distribute Marijuana.

A copy of the Redacted Indictment and Verdict Sheet in <u>United States v. DeAndre Wilson</u>, Case No. 19-CR-155-EAW, are attached hereto and incorporated herein by reference as combined **Exhibit A**.


9.     CLARK was Wilson's girlfriend during these events, and the investigation and subsequent proof at trial in Case No. 19-CR-155-EAW (*see* **Exhibit A**) established that Wilson stayed at CLARK's residence, located at 164 Parkridge Avenue, Buffalo, New York, despite

the fact that he was on parole and was supposed to be residing at 94 Poultney Avenue, Buffalo, New York.

10.     Generally, the investigation and subsequent proof at trial in Case No. 19-CR-155-EAW (*see* **Exhibit A**) established the following factual summary[1]:

Wilson was a childhood friend of Jariel Cobb a/k/a Doobie, and Jariel's older brother Jaron Reed a/k/a Fruit. Wilson, Cobb, and Reed grew up and spent time in and around Box Avenue, Buffalo, New York. Cobb and Reed became involved in drug dealing in the neighborhood at a young age, and eventually Reed was murdered.

Also, on April 21, 1993, Wilson was convicted of Murder in the 2nd Degree and Criminal Possession of a Weapon in the 4th Degree, in violation of New York State Penal Law, and Wilson was sentenced to 22 years to life imprisonment.

While Wilson was in prison, Cobb and his younger brother James Reed,[2] and others, became involved in substantial drug trafficking over time with the base of their operations located in the vicinity of 211 Box Avenue, Buffalo, New York, a house that had long been in their family, and 225 Box Avenue.

On October 3, 2018, Wilson was released from state prison and began serving a term of parole. Wilson was on the lowest level of parole supervision upon release and his parole residence during the time-period of the murders was 94 Poultney Avenue, Buffalo, New York.

Eventually, after being released from prison and while on parole, Wilson obtained a laborer job with a demolition and contracting company. In 2019, Wilson began dating CLARK. CLARK permitted Wilson to stay at her house, located at 164 Parkridge Avenue, Buffalo, New York to the point where, during

---

[1] The underlying investigation was lengthy and detailed, and the trial involved over 50 witnesses and lasted approximately 6 weeks. Therefore, this factual summary is not exhaustive or verbatim, does not contain all of the facts and details, and is based upon various sources of information.

[2] Both Cobb and Reed have prior federal narcotics convictions and served terms of imprisonment in federal prison.

an interview with the FBI on October 9, 2019, Wilson referred to 164 Parkridge Avenue as his house.

In or about March or April 2019, shortly after an associate of Jariel Cobb and James Reed was arrested for receiving approximately 2 kilograms of cocaine in the mail, Cobb and Reed shifted their source of narcotics to Dhamyl Roman-Audiffred, Miguel Anthony Valentin-Colon, and Nicole Marie Merced-Plaud. During this same period, Wilson sought out Cobb and interacted with him. During their conversations, Cobb provided Wilson with a quantity of U.S. currency that he earned through distribution of controlled substances. During the ensuing months, Cobb made additional cash payments of drug money to Wilson and also provided Wilson with marijuana for distribution as a part of the conspiracy.

However, the money and marijuana that Cobb provided Wilson was insufficient for Wilson, and Wilson desired more money through the distribution of cocaine. As a result, Wilson indicated that he wanted to obtain kilogram amounts of cocaine from Cobb through Cobb's suppliers who, by that time, were the individuals Wilson would later murder, namely, victims Miguel Anthony Valentin-Colon, Nicole Marie Merced-Plaud, and Dhamyl Roman-Audiffred. Cobb agreed that Wilson could obtain cocaine through Cobb from these suppliers.

The victims would travel from Florida to Buffalo, New York with multiple kilograms of cocaine for distribution, and Cobb would arrange to obtain multiple kilograms each time they traveled from Florida to Buffalo, New York. On several occasions prior to September 15, 2019, Wilson was unable to avail himself of purchasing a kilogram of cocaine because he missed the kilogram deals occurring prior to September 2019.

On September 15, 2019, the day Wilson was to purchase a kilogram of cocaine from Cobb's suppliers through Cobb, Wilson met with Cobb and James Reed. The three proceeded to 225 Box Avenue where the three of them unloaded wood obtained from a house Cobb had been doing work on into a large firepit located behind 225 Box Avenue.

After unloading the wood, Cobb and James Reed, who were traveling in Cobb's red Kia, and Wilson, who drove his black BMW, traveled to the vicinity of 4 Roebling Avenue, which was the intended location of a kilogram cocaine

deal wherein Wilson was to provide the money for the kilogram to Cobb in order to obtain the kilogram of cocaine from the victims.

After Wilson parked his vehicle on a nearby street, he entered the Kia with Cobb and James Reed, and they proceeded to 4 Roebling Avenue, Buffalo, New York.  Cobb let James Reed and Wilson into the house and then left for a period of time.  In the interim, the victims arrived in a rental white Chrysler Pacifica minivan and backed the vehicle into the driveway.  Victim Dhamyl Roman-Audiffred called Cobb on his drug dealing phone after arriving at 4 Roebling Avenue, and in close proximity, Wilson, who was inside the residence with Reed, also called Cobb on Cobb's personal phone.  Video evidence established that Cobb was on Box Avenue near the time of these calls and was observed traveling in the direction—driving his red Kia—towards 4 Roebling Avenue.

After Cobb arrived at 4 Roebling Avenue, he observed the rental white Chrysler Pacifica minivan backed into the driveway, and Miguel Anthony Valentin-Colon (known to Cobb as Tony) seated in the front driver's seat, and his girlfriend, Nicole Marie Merced-Plaud, seated in the front passenger seat.

After Cobb entered the residence, the cocaine transaction was set to occur. Shortly thereafter, Dhamyl Roman-Audiffred was invited inside through the rear door entering the kitchen.  Dhamyl Roman-Audiffred had a bag containing cocaine.  After checking the cocaine, Cobb went to another room in the house—where Wilson was waiting out of sight but not far away—to obtain the money for the cocaine.  Shortly after Cobb provided Wilson's money to Dhamyl Roman-Audiffred, she noticed something was wrong with the money. As that occurred, Wilson emerged from a nearby room, ran up to her, and struck her in the head several times with a blunt object that turned out to be a gun.  Wilson had provided fake money, and he robbed the kilogram of cocaine.

Wilson never met Dhamyl Roman-Audiffred before the moment he murdered her, and immediately, blood began to pool around her head from the wounds Wilson inflicted.  She appeared dead.  After learning that there were more people in the minivan parked in the driveway, Wilson exited the house and shot and killed both Miguel Anthony Valentin-Colon and Nicole Marie Merced-Plaud.

Wilson next moved Miguel Anthony Valentin-Colon's dead body from the driver seat to the floor of the minivan behind the driver's seat, and drove the

minivan from 4 Roebling Avenue to a nearby secluded location behind an address on Scajaquada Street.[3]  As it turns out, the 3-year-old son of Miguel Anthony Valentin-Colon and Nicole Marie Merced-Plaud, N.V.C., was present in the minivan and observed the murders.

After Wilson moved the minivan containing the dead bodies of Miguel Anthony Valentin-Colon and Nicole Marie Merced-Plaud along with their son, he went through the personal effects of deceased victims and removed their cell phones.  Wilson kept their cell phones with him but, unbeknownst to him, Google location data and cell service remained active on the victims' cell phones for a period of time.  As Wilson moved throughout the rest of the day— so did Miguel Anthony Valentin-Colon and Nicole Marie Merced-Plaud's cell phones.

After Wilson obtained the victims' phones and stashed the minivan containing the victims' dead bodies along with their minor son in a desolate location in the vicinity of 366 Scajaquada Street, Wilson walked back to his car, got in it, and drove to 94 Poultney Avenue, Buffalo, New York.  Wilson and CLARK had planned to attend the Meek Mill (a rap artist) concert at Darien Lake that night.[4]

Once Wilson arrived first at 94 Poultney Avenue, which was his official parole residence, the Google location data associated with victims Miguel Anthony Valentin-Colon and Nicole Marie Merced-Plaud placed their phones in the vicinity of 94 Poultney Avenue as well.  It is believed that Wilson used 94 Poultney Avenue to clean up, change, and get ready for the concert.

---

[3] Video surveillance, testimony from co-defendants Cobb and Reed as to Wilson driving the minivan away from 4 Roebling Avenue after the murders, Google location data, and call detail records are among the categories of proof establishing these facts.

[4] While Wilson was traveling to, attending, and returning from the concert with CLARK, Cobb and Reed cleaned the bloody scene at 4 Roebling Avenue, dismembered Dhamyl Roman-Audiffred's body inside the basement, moved her dismembered remains in several contractor bags to the firepit located behind 225 Box Avenue, and began burning her body parts.  Wilson was informed of this and later helped tend to the fire, which involved further chopping Dhamyl Roman-Audiffred's burning body parts into smaller pieces of bone.  When the body was eventually discovered during the execution of a federal search warrant at 225 Box Avenue, Dhamyl Roman-Audiffred's remains consisted of bones and bone fragments. Evidence at trial established that there were over 1,000 identifiable bone pieces, with many more unidentifiable bone pieces and fragments.  Dhamyl Roman-Audiffred's remains were eventually identified through DNA analysis.

Next, Wilson drove a short distance from 94 Poultney Avenue to 164 Parkridge Avenue to pick up CLARK to go to the Meek Mill concert. Wilson still had the victims' phones with him and the Google location data and call detail records associated with the victims' phones indicated the devices also moved from Poultney to Parkridge Avenues. While enroute to Darien Lake with CLARK, Wilson's Google location data indicated that he along with the victims' phones all traveled east on Interstate 90 towards Darien Lake. During this time, the dead bodies of Miguel Anthony Valentin-Colon and Nicole Marie Merced-Plaud remained in the minivan along with their son, N.V.C., who sat alone with his dead parents for hours at the secluded location behind 366 Scajaquada Street.

FBI CAST SA John Orlando provided expert mapping of Google location data and call detail record analysis, relating to Wilson, Miguel Anthony Valentin-Colon, Nicole Marie Merced-Plaud, and Dhamyl Roman-Audiffred, which was introduced at trial and entered into evidence as Exhibit 169. The following slides depict Wilson's phone along with the victims' phones all moving in the same direction, arriving at the same location, at the same approximate times as Wilson travelled to and from 164 Parkridge Avenue to Darien Lake with CLARK:

> Google location data on Poultney Avenue.



The above slide from FBI CAST SA John Orlando's analysis establishes that both Miguel Anthony Valentin-Colon and Nicole Marie Merced-Plaud's phones linked to Google and received cell service while on or in the vicinity of Poultney Avenue between approximately 7:15 p.m. and 7:28 p.m. At the time, Wilson's parole residence was 94 Poultney Avenue. Thereafter, as stated

above, both of the victims' phones and the associated Google location data and call detail record information documented movement towards CLARK's 164 Parkridge Avenue residence, as follows:



As depicted above, Wilson activated his Google location information and his location data and call detail record information (indicated in red) traveled to Darien Lake with that of the victims (Miguel Anthony Valentin-Colon indicated in blue and Nicole Marie Merced-Plaud indicated in green), as depicted in the following four slides[5]:

---

[5] Wilson's Google account is mrdwilson22@gmail.com and his cell phone number is 212-470-0334, which are indicated in red in the excerpted CAST maps. Miguel Anthony Valentin-Colon's Google account is mavc2030@gmail.com and his cell phone number is 321-961-0379, which are indicated in blue in the excerpted CAST maps. Nicole Marie Merced-Plaud's Google account is marie.naomix12@gmail.com and her cell phone number is 321-333-9512, which are indicated in green in the excerpted CAST maps.









As set depicted in the above slides, Wilson, who possessed both Miguel Anthony Valentin-Colon and Nicole Marie Merced-Plaud's phones, traveled from Buffalo to Darien Lake with CLARK,[6] where they remained together for hours at a rap concert. Shortly after 11 p.m., Wilson and the victims' Google location data and call detail record information indicate movement from Darien Lake back towards the City of Buffalo, as follows:

---

[6] Both Wilson and CLARK, during interviews on October 9, 2019, stated, in sum and substance, that they traveled to and from the Darien Lake concert together and that nobody else was with them.



According to the Google location data, Wilson, who was with CLARK, arrived at 164 Parkridge Avenue at approximately 12:04 a.m. By approximately 12:08 a.m., Wilson left 164 Parkridge Avenue, and at approximately 12:12 a.m., met with Cobb and James Reed at 225 Box Avenue, where they were in the process of burning Dhamyl Roman-Audiffred's dismembered remains, as depicted in the following two slides:





11.     The above-described FBI CAST Google location data and call detail record mapping establishes that Wilson arrived on Parkridge Avenue at approximately 12:04 a.m., and that Wilson remained on Parkridge for only a few minutes before departing, and then arriving at approximately 12:12 a.m., in the area of 211/225 Box Avenue to meet Cobb and Reed.  FBI Pole Camera surveillance also captured Wilson arriving on Box Avenue on video at that approximate time, as follows:



---

[7] The firepit was located behind 225 Box Avenue and is located adjacent to a vacant lot and 211 Box Avenue.  The FBI CAST analysis indicated 211 Box Avenue on the slides, but 211 and 225 Box Avenue are, essentially, right next to each other.

[8] Still shot taken from FBI Pole Camera surveillance video introduced at trial, as part of Government Exhibit 56A at 41:46 on the video-counter.

12.     According to Google location data, call detail records, video surveillance from multiple sources, and witness testimony during the trial, between approximately 12:12 a.m. and 5:07 a.m. on September 16, 2019, Wilson was involved in doing, among other things, the following: (i) tending the fire that burned Dhamyl Roman-Audiffred's dismembered remains in the fire pit behind 225 Box Avenue; (ii) driving with Cobb to destroy and/or dispose of the victims' cell phones; (iii) obtaining gasoline to use to burn the white Chrysler Pacifica minivan and the deceased bodies of Miguel Anthony Valentin-Colon and Nicole Marie Merced-Plaud; (iv) driving and moving the white Chrysler Pacifica minivan containing the dead bodies and minor child N.V.C. from a secluded location behind 366 Scajaquada Street to 111 Tonawanda Street, Buffalo, New York; (v) dousing the white Chrysler Pacifica minivan containing the dead bodies with gasoline and setting it on fire in the presence of minor child N.V.C.; (vi) taking N.V.C. from the location of the arson, stripping him of his clothing, dousing him with water and dish soap, and abandoning him wearing only a diaper at the doorstep of a random stranger on Potomac Avenue, Buffalo, New York; and (vii) returning to Box Avenue to clean the interior of Cobb's red Kia and to burn additional items.[9]

13.     Based upon the evidence developed during the investigation and subsequent proof at trial in United States v. DeAndre Wilson, Case No. 19-CR-155-EAW, Wilson was not with CLARK at 164 Parkridge Avenue between approximately 12:08 a.m. and 5:07 a.m. on September 16, 2019.

---

[9] Notably, the discovery of the minor child, N.V.C., wearing nothing but a diaper on the porch at 63 Potomac Avenue occurred at approximately 8:00 a.m. on September 16, 2019. The discovery of N.V.C. on the porch and, later that same day, the discovery of the burned Chrysler Pacifica minivan containing the victim's burned remains at 111 Tonawanda Street at approximately 5:52 p.m. garnered considerable local and national media attention.

14.     CLARK knew full well that Wilson was not with her at 164 Parkridge Avenue between approximately 12:08 a.m. and 5:07 a.m. on September 16, 2019.  Indeed, while Wilson was with Cobb in the vicinity of 366 Scajaquada Street preparing to move the minivan containing the dead bodies and minor child N.V.C., CLARK called Wilson from her cell phone at 2:20:23 a.m., as depicted in the below slide:



## DESHEMA CLARK'S KNOWLEDGE THAT A FELONY COGNIZABLE IN A COURT OF THE UNITED STATES HAD BEEN COMMITTED

15.     Despite arriving home at 164 Parkridge Avenue after 5:00 a.m. on September 16, 2019, as described above, Wilson still went to work early that morning.  In particular, his employment records combined with Google location data and call detail record information demonstrate that he worked at two locations, specifically a residence located at 316/320 Rivermist Drive, Buffalo, NY and a Erie 1 BOCES office located at 355 Harlem Road, West Seneca, NY.

16.     During the course of his workday, after a night of committing numerous federal felonies detailed above, Wilson had significant telephone contact with CLARK.  In particular, Wilson (#0334) and CLARK (#4599) spoke for approximately 40 minutes while he was at work, as indicated on the below call detail records:

| | | | | | | |
|---|---|---|---|---|---|---|
| 143 | 09/16/2019 | 16:09:52 | 1103 | moc | Outgoing | 12124700334 | 17163704599 |
| 144 | 09/16/2019 | 16:28:29 | 15 | mtc | Incoming | 17163704599 | 12124700334 |
| 155 | 09/16/2019 | 19:29:46 | 23 | moc | Outgoing | 12124700334 | 17163704599 |
| 156 | 09/16/2019 | 19:33:32 | 11 | mtc | Incoming | 12126614454 | 12124700334 |
| 157 | 09/16/2019 | 19:34:29 | | moc | Outgoing | 12124700334 | 17163704599 |
| 162 | 09/16/2019 | 23:10:30 | 1238 | moc | Outgoing | 12124700334 | 17163704599 |

17.     Moreover, CLARK's cell phone extraction records obtained by the FBI, described *infra*, established that CLARK received a text from Wilson asking, "Are you on your way?" at approximately 15:09 (3:09 pm).  Thereafter, CLARK searched Wilson's work location, specifically Erie 1 BOCES located at 355 Harlem Road, and CLARK traveled to that location, as follows:

| | | | | |
|---|---|---|---|---|
| 74 | (42.851662, -78.786491) | Description: Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224<br><br>Time: 9/16/2019 16:09(UTC-4)<br>Source: Safari | | |
| 75 | (42.851662, -78.786491) | Description: Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224<br><br>Time: 9/16/2019 16:09(UTC-4)<br>Source: Safari | | |
| 76 | (42.851662, -78.786491) | Description: Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224<br><br>Time: 9/16/2019 16:09(UTC-4)<br>Source: Safari | | |

| 216 | 9/16/2019 16:11(UTC-4) | Safari | @42.8296428,-78.7856961,13z Position: (42.828642, -78.785697) | Unknown | |
| 217 | 9/16/2019 16:11(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 | Unknown | |

2073

| 218 | 9/16/2019 16:11(UTC-4) | Safari | @42.8402699,-78.7822596,13z Position: (42.840269, -78.782260) | Unknown | |
| 219 | 9/16/2019 16:11(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 | Unknown | |
| 220 | 9/16/2019 16:11(UTC-4) | Safari | @42.8402699,-78.7822596,13z Position: (42.840269, -78.782260) | Unknown | |
| 221 | 9/16/2019 16:11(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 | Unknown | |
| 222 | 9/16/2019 16:11(UTC-4) | Safari | @42.8402699,-78.7822596,13z Position: (42.840269, -78.782260) | Unknown | |
| 223 | 9/16/2019 16:11(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 | Unknown | |
| 224 | 9/16/2019 16:10(UTC-4) | Safari | @42.8402699,-78.7822596,13z Position: (42.840269, -78.782260) | Unknown | |
| 225 | 9/16/2019 16:10(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 | Unknown | |
| 226 | 9/16/2019 16:10(UTC-4) | Safari | @42.8402699,-78.7822596,13z Position: (42.840269, -78.782260) | Unknown | |
| 227 | 9/16/2019 16:10(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 | Unknown | |
| 228 | 9/16/2019 16:10(UTC-4) | Safari | @42.8402699,-78.7822596,13z Position: (42.840269, -78.782260) | Unknown | |
| 229 | 9/16/2019 16:10(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 | Unknown | |
| 230 | 9/16/2019 16:10(UTC-4) | Safari | @42.851662,-78.7864909,15z Position: (42.851662, -78.786491) | Unknown | |
| 231 | 9/16/2019 16:10(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 | Unknown | |
| 232 | 9/16/2019 16:10(UTC-4) | Safari | @42.851662,-78.7864909,15z Position: (42.851662, -78.786491) | Unknown | |
| 233 | 9/16/2019 16:09(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 Position: (42.851662, -78.786491) | Unknown | |
| 234 | 9/16/2019 16:09(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 Position: (42.851662, -78.786491) | Unknown | |
| 235 | 9/16/2019 16:09(UTC-4) | Safari | Erie 1 BOCES, 355 Harlem Rd, West Seneca, NY 14224 Position: (42.851662, -78.786491) | Unknown | |

| 15274 | Locations | | | 9/16/2019 16:10(UTC-4) | | Erie+1+BOCES+355+Harlem+Rd.+West+Se neca,+NY+14224  Erie 1 BOCES, 355 Harlem Rd. West Seneca, NY 14224 |
| 15275 | Locations | | | 9/16/2019 16:10(UTC-4) | | Erie+1+BOCES+355+Harlem+Rd.+West+Se neca,+NY+14224  Erie 1 BOCES, 355 Harlem Rd. West Seneca, NY 14224 |
| 15276 | Locations | | | 9/16/2019 16:10(UTC-4) | | Erie+1+BOCES+355+Harlem+Rd.+West+Se neca,+NY+14224  Erie 1 BOCES, 355 Harlem Rd. West Seneca, NY 14224 |
| 15277 | Searched Items | | | 9/16/2019 16:10(UTC-4) | | Erie 1 BOCES, 355 Harlem Rd. West Seneca, NY 14224 |
| 15278 | Searched Items | | Yes | 9/16/2019 16:10(UTC-4) | | @42.840269,-78.7822596,13z  Location info.  (42.840269,-78.782260) |
| 15279 | Web History | | | 9/16/2019 16:11(UTC-4) [Last Visited] | | Your location to 355 Harlem Rd - Google Maps |
| 15280 | Locations | | | 9/16/2019 16:11(UTC-4) | | Erie+1+BOCES+355+Harlem+Rd.+West+Se neca,+NY+14224  Erie 1 BOCES, 355 Harlem Rd. West Seneca, NY 14224 |
| 15281 | Locations | | | 9/16/2019 16:11(UTC-4) | | Erie+1+BOCES+355+Harlem+Rd.+West+Se neca,+NY+14224  Erie 1 BOCES, 355 Harlem Rd. West Seneca, NY 14224 |
| 15282 | Locations | | | 9/16/2019 16:11(UTC-4) | | Erie+1+BOCES+355+Harlem+Rd.+West+Se neca,+NY+14224  Erie 1 BOCES, 355 Harlem Rd. West Seneca, NY 14224 |
| 15283 | Searched Items | | | 9/16/2019 16:11(UTC-4) | | Erie 1 BOCES, 355 Harlem Rd. West Seneca, NY 14224 |
| 15284 | Searched Items | | Yes | 9/16/2019 16:11(UTC-4) | | @42.840269,-78.7822596,13z  Location info.  (42.840269,-78.782260) |
| 15285 | Web History | | | 9/16/2019 16:11(UTC-4) [Last | | Your location to 355 Harlem Rd - Google Maps |

18.     CLARK's cell phone extraction indicates that she traveled to Wilson's work location at 355 Harlem Road and waited outside for a period of time until they met.   In particular, Wilson (stored in CLARK's phone as contact "Baby") texted at 22:27 (10:27 pm) "My Baby U out there yet?"   CLARK responded, "Yes."   Wilson replied, "Okay i'll be out in a minute," as follows:

| 15387 | SMS Messages | Incoming | | 9/16/2019 22:27(UTC-4) | From: +12124700334 Baby | My Baby U out there yet ? |
| 15388 | SMS Messages | Outgoing | | 9/16/2019 22:27(UTC-4) | To: +12124700334 Baby | Yes |

300

| 15389 | SMS Messages | Incoming | | 9/16/2019 22:29(UTC-4) | From: +12124700334 Baby | Okay i'll be out in a minute |
| 15390 | SMS Messages | Incoming | | 9/16/2019 22:29(UTC-4) | From: +12124700334 Baby To: +17163704599 | Okay i'll be out in a minute |

19.     After the text exchanges on September 16, 2019, between 10:27 pm and 10:29 pm, as set forth above, Wilson and CLARK spoke on the phone at 11:10 p.m. (23:10:30) for over 20 minutes.   *See* ¶ 16, *supra*.

20.     On September 17, 2019, the day after N.V.C. and the remains of who would later be identified as N.V.C.'s deceased parents were discovered, Wilson expressed appreciation for CLARK in text exchanges that indicate CLARK did something for him in the immediate aftermath of the murders.  In particular, after a series of texts where Wilson thanked her, CLARK stated, "Don't keep thanking me..I'm only doin what I'm supposed to be doing!"  The text exchange from CLARK's phone extraction follows:

| 15429 | SMS Messages | Incoming | 9/17/2019 09:04(UTC-4) | From: +12124700334 Baby | 1/2 Hey My Baby I just wanna tell U thanks for being there for me & tha |
|---|---|---|---|---|---|
| 15430 | SMS Messages | Incoming | 9/17/2019 09:04(UTC-4) | From: +12124700334 Baby | 1 I LUV U FORREAL !!!! |
| 15431 | SMS Messages | Incoming | 9/17/2019 09:04(UTC-4) | From: +12124700334 Baby To: +17163704599 | 1 I LUV U FORREAL !!!! |
| 15432 | SMS Messages | Incoming | 9/17/2019 09:04(UTC-4) [Read] | From: +12124700334 Baby To: +17163704599 | Okay I'll be out in a minute |
| 15433 | SMS Messages | Incoming | 9/17/2019 09:04(UTC-4) [Read] | From: +12124700334 Baby To: +17163704599 | 1 I LUV U FORREAL !!!! |
| 15434 | SMS Messages | Outgoing | 9/17/2019 09:06(UTC-4) | To: +12124700334 Baby | We are for each other baby I thank you for being there for me as well!! I Love You So Much More!!! |
| 15435 | SMS Messages | Outgoing | 9/17/2019 09:06(UTC-4) | From: +17163704599 To: +12124700334 Baby | We are for each other baby I thank you for being there for me as well!! I Love You So Much More!!! |
| 15436 | SMS Messages | Outgoing | 9/17/2019 09:26(UTC-4) | To: +12124700334 Baby | Don't keep thanking me ..I'm only doin what I'm supposed to be doing! |
| 15437 | SMS Messages | Outgoing | 9/17/2019 09:26(UTC-4) | From: +17163704599 To: +12124700334 Baby | Don't keep thanking me ..I'm only doin what I'm supposed to be doing! |

21.     Based upon my training and experience, and the evidence developed during the investigation and adduced at trial, I believe the call detail records and text exchanges on September 16-17, 2019, as set forth in paragraphs 16-20, *supra*, indicate that CLARK has knowledge of the felonies committed by Wilson and others.  Moreover, I believe that Wilson's texts thanking CLARK indicate that she helped him in some way following the murders that he committed, and that CLARK's text "Don't keep thanking me..I'm only doin what I'm supposed to be doing[,]" was intended to demonstrate her loyalty to Wilson notwithstanding the fact that he committed several serious federal crimes.

22.     On September 25, 2019, the FBI executed a series of federal search warrants on properties associated with Jariel Cobb a/k/a Doobie and James Reed, including 225 Box Avenue where Wilson, Cobb, and Reed burned evidence in the firepit, including the remains of Dhamyl Roman-Audiffred.   Cobb and Reed were arrested on *narcotics charges only* that morning.

23.     That same morning, September 25, 2019, CLARK texted Wilson at 7:33 a.m., "They just raided dobie," in reference to search warrants being executed in relation to Cobb. Although at the time Cobb and Reed were only arrested for drugs and there was no public information linking them to the van, bodies, or murders, that same day CLARK started Google searching "footage of parents burned in car tonawanda."[10]

24.     After CLARK advised Wilson that Cobb had been "raided," she called him at 8:21 a.m., which is demonstrated from the cell phone extraction from Wilson's phone, as follows:

| 4379 | SMS Messages | Incoming | | | 9/25/2019 11:33(UTC+0) | From: +17163704599 Baby My | They just raided dobie | | |
|------|--------------|----------|--|--|------------------------|----------------------------|------------------------|--|--|
| 4380 | Call Log | Incoming | | | 9/25/2019 12:21(UTC+0) | From: +17163704599 My Baby | 00:00:00 | | [11] |

25.     Wilson did not answer CLARK's call, as indicated by the "00:00:00" duration of the incoming call, but he texted, "I can't pick up right now but I heard U .Was it on the

---

[10] Government Trial Exhibit 160F at Line 110.

[11] Government Trial Exhibit 158C is a portion of the cell phone extraction of Wilson's cell phone.   CLARK (#4599) is stored in Wilson's phone as contact "My Baby".   Additionally, UTC +0 indicates that 4 hours must be subtracted from the times set forth in Wilson's cell phone extraction in order to convert the time to EST.

News ?"  CLARK replied that she heard the information from "cuzn".  The text exchange from an extraction of CLARK's phone is as follows:

| 16309 | SMS Messages | Outgoing | | 9/25/2019 07:33(UTC-4) | To: +12124700334 Baby | They just raided doble |
|---|---|---|---|---|---|---|

3036

| 16327 | SMS Messages | Incoming | | 9/25/2019 08:38(UTC-4) | From: +12124700334 Baby | I can't pick up right now but i heard U  Was it on the News ? |
|---|---|---|---|---|---|---|

| 16337 | SMS Messages | Outgoing | | 9/25/2019 08:53(UTC-4) | To: +12124700334 Baby | No cuzn called me this morning when i got to work they raided b st & box idk about his house |
|---|---|---|---|---|---|---|
| 16338 | SMS Messages | Incoming | | 9/25/2019 08:54(UTC-4) | From: +12124700334 Baby | Okay i'll talk to U in a minute |

Notably, the above-referenced text messages were exchanged while the FBI was still on scenes, including properties located on B Street and Box Avenue, conducting the searches.


26.     On September 25, 2019, at 8:54 a.m., CLARK texted Wilson and stated, "I was omw to u cuz I didn't know if u were ok," as follows from an extraction of CLARK's phone:

| 16337 | SMS Messages | Outgoing | | 9/25/2019 08:53(UTC-4) | To: +12124700334 Baby | No cuzn called me this morning when i got to work they raided b st & box idk about his house |
|---|---|---|---|---|---|---|
| 16338 | SMS Messages | Incoming | | 9/25/2019 08:54(UTC-4) | From: +12124700334 Baby | Okay i'll talk to U in a minute |
| 16339 | SMS Messages | Outgoing | | 9/25/2019 08:54(UTC-4) | To: +12124700334 Baby | Ok |
| 16340 | SMS Messages | Outgoing | | 9/25/2019 08:54(UTC-4) | To: +12124700334 Baby | I was omw to u cuz I didn't know if u were ok |
| 16341 | SMS Messages | Outgoing | | 9/25/2019 08:55(UTC-4) | To: +12124700334 Baby | He keeps asking me if I talked to u |
| 16342 | SMS Messages | Incoming | | 9/25/2019 08:55(UTC-4) | From: +12124700334 Baby | Who ? |
| 16343 | SMS Messages | Outgoing | | 9/25/2019 08:55(UTC-4) | To: +12124700334 Baby | Cousin |

Based upon my training and experience, knowledge of the investigation, and the evidence adduced at trial, Wilson was at work and CLARK was concerned that he was, or was going to be, arrested.  As a result, CLARK began traveling to the location of Wilson's job site to check on him.

27.    After exchanging additional text messages, at 10:00 a.m., Wilson called CLARK from his phone and they engaged in a 13 minute and 14 second phone call as indicated on the extraction from Wilson's phone:

| 4389 | Call Log | Outgoing | | | 9/25/2019 13:00(UTC+0) | To: +17163704599 My Baby | 00:13:14 | |
|------|----------|----------|--|--|------------------------|---------------------------|----------|--|

28.    At approximately 10:02 a.m., CLARK text messaged Wilson, indicating she arrived at his work location as indicated from the extraction of CLARK's phone:

| 16353 | SMS Messages | Outgoing | | | 9/25/2019 10:02(UTC-4) | To: +12124700334 Baby | Outside | |
|-------|--------------|----------|--|--|------------------------|------------------------|---------|--|

29.    After a period of time waiting, CLARK text messaged Wilson, asking if she should leave, to which Wilson responded, "Don't leave," as follows:

| 16358 | SMS Messages | Outgoing | | | 9/25/2019 10:31(UTC-4) | To: +12124700334 Baby | Should I leave | |
|-------|--------------|----------|--|--|------------------------|------------------------|----------------|--|
| 16359 | SMS Messages | Outgoing | | | 9/25/2019 10:32(UTC-4) | To: +12124700334 Baby | I'm leaving | |
| 16360 | SMS Messages | Outgoing | | | 9/25/2019 10:32(UTC-4) | To: +12124700334 Baby | I see the owner | |
| 16361 | SMS Messages | Incoming | | | 9/25/2019 10:34(UTC-4) | From: +12124700334 Baby | Give me a few minutes | |
| 16362 | SMS Messages | Incoming | | | 9/25/2019 10:35(UTC-4) | From: +12124700334 Baby | Don't leave. | |

30.    Following that text message exchange, at 10:35 a.m., Wilson called CLARK again and they spoke for 1 minute and 30 seconds, as follows:

| 4390 | Call Log | Outgoing | | | 9/25/2019 13:35(UTC+0) | To: +17163704599 My Baby | 00:01:30 | [12] |
|------|----------|----------|--|--|------------------------|---------------------------|----------|------|

---

[12] Id.

31.     As illustrated below, later that same morning, Wilson texted CLARK advising her "Watch your surroundings & be careful I OWE U BIG TIME I LUV U," and CLARK responded one word: "Terrified."   Wilson replied, "I know just be on point."   The text exchanges continued with Wilson reminding CLARK to "be on point" and alternatively asking her "U GOOD?"   CLARK responded, "So far."   A portion of the extraction from Wilson's phone follows:

| 4391 | SMS Messages | Incoming | 9/25/2019 14:02(UTC+0) | From: +17163704599 Baby My | Outside |
| 4392 | SMS Messages | Incoming | 9/25/2019 14:31(UTC+0) | From: +17163704599 Baby My | Should I leave |
| 4393 | SMS Messages | Incoming | 9/25/2019 14:32(UTC+0) | From: +17163704599 Baby My | I'm leaving |

158C / 1

| 4394 | SMS Messages | Incoming | 9/25/2019 14:33(UTC+0) | From: +17163704599 Baby My | I see the owner |
| 4395 | SMS Messages | Outgoing | 9/25/2019 14:34(UTC+0) | To: +17163704599 Baby My | Give me a few minutes. |
| 4396 | SMS Messages | Outgoing | 9/25/2019 14:35(UTC+0) | To: +17163704599 Baby My | Don't leave. |
| 4397 | Call Log | Outgoing | 9/25/2019 14:43(UTC+0) | To: +17163704599 My | 00:00:14 |
| 4398 | SMS Messages | Outgoing | 9/25/2019 14:56(UTC+0) | To: +17163704599 Baby My | Watch your surroundings & be careful "I OWE U BIG TIME I LUV U" |
| 4399 | SMS Messages | Incoming | 9/25/2019 15:03(UTC+0) | From: +17163704599 Baby My | Terrified |
| 4400 | SMS Messages | Outgoing | 9/25/2019 15:08(UTC+0) | To: +17163704599 Baby My | I know just be on point. ◇◇◇◇ |
| 4401 | SMS Messages | Outgoing | 9/25/2019 15:24(UTC+0) | To: +17163704599 Baby My | Let me know something !! |
| 4402 | SMS Messages | Incoming | 9/25/2019 15:25(UTC+0) | From: +17163704599 Baby My | Let u know what |
| 4403 | SMS Messages | Incoming | 9/25/2019 15:25(UTC+0) | From: +17163704599 Baby My | ?? |
| 4404 | SMS Messages | Outgoing | 9/25/2019 15:26(UTC+0) | To: +17163704599 Baby My | U GOOD ? |
| 4405 | SMS Messages | Incoming | 9/25/2019 15:27(UTC+0) | From: +17163704599 Baby My | So far |
| 4406 | SMS Messages | Incoming | 9/25/2019 15:35(UTC+0) | From: +17163704599 Baby My | Shit crazy yo!! |

32.     Based upon my training and experience and the evidence developed during the investigation and adduced at trial, I believe the phone call and text exchanges on September 25, 2019, (*see* paragraphs 23-31, *supra*), demonstrate that CLARK was paying close attention regarding law enforcement activity directed toward any of the participants in the crimes committed on September 15-16, 2019.   Moreover, after Jariel Cobb, who she referred to as

"dobie" in her text, was raided, CLARK was "[t]errified."   I believe the text messages described above establish CLARK's consciousness of guilt and her knowledge of the actual commission of a felony (or felonies) cognizable by a Court of the United States had been committed by Wilson and Cobb.

33.     Furthermore, when Wilson replied on September 25, 2019, "I know just be on point," I believe Wilson was reminding CLARK to be aware of law enforcement and that Wilson's follow-up text later in the day "U GOOD?" and CLARK's reply "So far," was Wilson trying to determine whether law enforcement approached CLARK yet, and CLARK advised Wilson in response that law enforcement had not approached or arrested her "So far."   At that point in the investigation, law enforcement had not interviewed CLARK regarding the crimes committed on September 15-16, 2019.

34.     CLARK and Wilson exchanged a few more texts on September 25, 2019, and then CLARK began Google searching information with respect to the murders, specifically "parents burned in car tonawanda," as follows:

| 110 | 9/25/2019 13:05(UTC-4) | Safari | footage of parents burned in car tonawanda | Unknown | 13 |
|-----|------------------------|--------|---------------------------------------------|---------|-----|

35.     An extraction of CLARK's cell phone indicates that she then viewed a local media report regarding the murders as follows:

---

[13] A portion of CLARK's searches conducted using the Safari Internet application on her cell phone were introduced at trial as Government Trial Exhibit 160F.

| 16389 | Web History | | | 9/25/2019 13:05(UTC-4) [Last Visited] | | footage of parents burned in car tonawanda - Google Search | |
| 16390 | Web History | | | 9/25/2019 13:05(UTC-4) [Last Visited] | | footage of parents burned in car tonawanda - Google Search | |
| 16391 | Searched Items | | | 9/25/2019 13:05(UTC-4) | | footage of parents burned in car tonawanda | |
| 16393 | Web History | | | 9/25/2019 13:05(UTC-4) [Last Visited] | | Surveillance video shows child found on porch being led from burning car by two people \| wgrz.com | |

36.     The above Google searches, text messages, and phone calls on September 25, 2019, conducted at a time when there was no public information linking either Jariel Cobb or Wilson by name to the murders, fires, obstruction, or the discovery of minor child N.V.C. abandoned on a porch, establish that CLARK had knowledge of individuals, including Wilson, who were involved with the crimes before the FBI solved the case or even had fully identified Wilson.

37.     On October 1, 2019, CLARK again Google searched "parents burned in car fire in tonawanda" and then on October 1 and 2, 2019, viewed a local news story from wgrz.com, as indicated in the extraction of her cell phone:

| 17493 | Searched Items | | | 10/1/2019 20:41(UTC-4) | | parents burned in a car fire in tonawanda | |

3082

| 17494 | Web History | | | 10/1/2019 20:41(UTC-4) [Last Visited] | | parents burned in a car fire in tonawanda - Google Search | |
| 17495 | Searched Items | | | 10/1/2019 20:41(UTC-4) | | parents burned in a car fire in tonawanda | |
| 17496 | Web History | | | 10/1/2019 20:42(UTC-4) [Last Visited] | | Surveillance video shows child found on porch being led from burning car by two people \| wgrz.com | |
| 17538 | Web History | | | 10/2/2019 20:43(UTC-4) [Last Visited] | | Surveillance video shows child found on porch being led from burning car by two people \| wgrz.com | |
| 17539 | Web History | | | 10/2/2019 20:43(UTC-4) [Last Visited] | | Surveillance video shows child found on porch being led from burning car by two people \| wgrz.com | |

26

38.     The wgrz.com news story[14] that CLARK viewed contained information confirming that two bodies in a burned vehicle were found behind a warehouse on Tonawanda Street, that the Buffalo Police Department ("BPD") considered the matter a homicide case, the discovery of N.V.C. on a porch was connected to the individuals who had rented the burned vehicle, and that law enforcement sought two "people of interest" depicted in three surveillance video clips.  In the report, police urged anyone who had information that could identify the suspects to come forward.  One of the video clips specifically depicted two unknown individuals, now known to be Cobb and Wilson, leading the minor child from the scene of the burning minivan containing the deceased bodies of his parents:



[15]

---

[14]     The     WGRZ     news     story     may     be     found     at https://www.wgrz.com/article/news/crime/surveillance-video-shows-child-found-on-porch-being-led-from-burning-car/71-97ddde65-0ab8-438a-bd0c-239f66685e26.  Portions of the same surveillance video shown in this news story viewed by CLARK were shown to her by law enforcement during her October 9, 2019 interview, described in further detail below.

[15] Still shot taken from video shown during WGRZ news story, available at https://www.wgrz.com/article/news/crime/surveillance-video-shows-child-found-on-porch-being-led-from-burning-car/71-97ddde65-0ab8-438a-bd0c-239f66685e26, time stamp



39.    Early morning on October 2, 2019, Wilson text messaged CLARK, "My Baby

pick up now !!"  He immediately texted, "Pick up", and then later that morning, CLARK

replied "Call me".  Wilson replied later in the day, "Yo My Baby wats up with U?"  The

extraction of CLARK's phone indicated both text messages were before she continued to

Google search and view the above-described news story:

| 17498 | SMS Messages | Incoming | | 10/2/2019 07:17(UTC-4) | From: +12124700334 Baby | My Baby pick up now !! |
| 17499 | SMS Messages | Incoming | | 10/2/2019 07:17(UTC-4) | From: +12124700334 Baby | Pick up |
| 17506 | SMS Messages | Outgoing | | 10/2/2019 08:05(UTC-4) | To: +12124700334 Baby | Call me |
| 17516 | SMS Messages | Incoming | | 10/2/2019 12:03(UTC-4) | From: +12124700334 Baby | Yo My Baby whats up with U ? |

---

00:56 on news story video-counter.  The red circle around the date and time stamp of the
video was contained on the original news story.

[16] Still shot taken from video shown during WGRZ news story, available at
https://www.wgrz.com/article/news/crime/surveillance-video-shows-child-found-on-
porch-being-led-from-burning-car/71-97ddde65-0ab8-438a-bd0c-239f66685e26, time stamp
1:02 on the news story video-counter.  The news story contained the red circle around the
figure depicted here, which was later established at trial to be Wilson.

| 17538 | Web History | | | 10/2/2019 20:43(UTC-4) [Last Visited] | | Surveillance video shows child found on porch being led from burning car by two people | wgrz.com |
| 17539 | Web History | | | 10/2/2019 20:43(UTC-4) [Last Visited] | | Surveillance video shows child found on porch being led from burning car by two people | wgrz.com |
| 17540 | Cookies | | | 10/2/2019 20:43(UTC-4) [Accessed] | | wgrz.com |
| 17541 | Cookies | | | 10/2/2019 20:43(UTC-4) [Accessed] | | wgrz.com |
| 17542 | Cookies | | | 10/2/2019 20:43(UTC-4) [Accessed] | | www.wgrz.com |
| 17543 | Cookies | | | 10/2/2019 20:43(UTC-4) [Accessed] | | www.wgrz.com |
| 17544 | Cookies | | | 10/2/2019 20:43(UTC-4) [Accessed] | | www.wgrz.com |
| 17545 | Cookies | | | 10/2/2019 20:43(UTC-4) [Accessed] | | www.wgrz.com |
| 17546 | Cookies | | | 10/2/2019 20:43(UTC-4) [Accessed] | | wgrz.com |

| 17547 | Web History | | | 10/2/2019 20:44(UTC-4) [Last Visited] | | parents burned in a car fire in tonawanda - Google Search |
| 17548 | Web History | | | 10/2/2019 20:44(UTC-4) [Last Visited] | | parents burned in a car fire in tonawanda - Google Search |
| 17549 | Searched Items | | | 10/2/2019 20:44(UTC-4) | | parents burned in a car fire in tonawanda |

40.     Based upon the foregoing, prior to October 9, 2019, CLARK had knowledge of the actual commission of a felony (or felonies) by Wilson cognizable by a court of the United States, and in her October 9, 2019 interview with the FBI and members of BPD, CLARK made false, fraudulent, and fictitious statements.  As a result of her false, fraudulent, and fictitious statements, CLARK concealed information and did not make known the same as soon as possible to some judge or other person in civil or military authority under the United States in violation of Title 18, United States Code, Section 4.

## DESHEMA CLARK'S STATEMENTS ON OCTOBER 9, 2019

41.     On October 9, 2019, the FBI executed a federal search warrant at CLARK's 164 Parkridge Avenue residence.  Both Wilson and CLARK were present.

42.     During the search of 164 Parkridge Avenue, Wilson's cell phone, marijuana packaged for sale, a scale, and other items were documented and seized.  A subsequent federal search warrant was executed on Wilson's cell phone, which revealed the cell phone extraction data detailed above.

43.     Also on October 9, 2019, Wilson was brought to the BPD Headquarters, read his *Miranda* warnings, and interviewed by BPD Homicide Detective Adam Stephany and FBI SA Clinton Winters.  Following his interview, Wilson was held in custody on a parole detainer.

44.     During the October 9, 2019 search of 164 Parkridge Avenue, CLARK spoke with investigators at her residence and consented verbally and in writing to a search of her cell phone (#4599), which resulted in the extraction data from her cell phone set forth above.

45.     CLARK then voluntarily travelled on her own to BPD Headquarters to give an additional statement.   That interview took place in an interview room and was video recorded.[17]

---

[17] CLARK was originally charged in a 24-count second superseding indictment, 19-cr-155 (Doc. 160), with three counts relating to controlled substances, as follows: narcotics conspiracy in violation of 21 U.S.C. § 846 (Count 1); maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (Count 23); and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) and 18 U.S.C. § 2 (Count 24).

CLARK filed two separate suppression motions.  She moved to suppress her statements and the evidence obtained from her cellphone (Doc. 189).  CLARK also filed a motion to suppress evidence recovered from the October 9, 2019 search of her 164 Parkridge Avenue residence (Doc. 268).

46.    During the course of her interview, CLARK made several false, fraudulent, and fictitious statements in an effort to provide a false alibi for Wilson regarding his whereabouts between September 15, 2019, at approximately 11:30 p.m. (when she estimated they returned from the concert at Darien Lake) and the morning of September 16, 2019, when Wilson went to work.

47.    As set forth below, CLARK falsely, fraudulently, and fictitiously stated, in sum and substance, that Wilson was with her at 164 Parkridge Avenue during that timeframe and she did not know he left.  However, in truth and in fact, and as CLARK then and there well knew: (i) Wilson left 164 Parkridge Avenue shortly after midnight minutes after dropping CLARK off at home after the concert; (ii) CLARK did not cook "Sunday dinner" and then eat the food with Wilson after midnight at 164 Parkridge Avenue; (iii) Wilson was not at 164 Parkridge Avenue when CLARK went to sleep at 12:30 a.m.; (iv) Wilson was not in bed with CLARK watching "Coparts" on YouTube after midnight between 12:12 a.m. and 5:07 a.m. on September 16, 2019; and (iv) Wilson was not still in bed when CLARK woke up during the middle of the night.

---

In a Decision and Order (Doc. 310), dated October 4, 2021, Judge Elizabeth A. Wolford denied both CLARK's motion to suppress (Doc. 268) and request for a *Franks* hearing.

As to the first motion to suppress (Doc. 189), oral argument was initially held on May 20, 2021 (Doc. 229; Doc. 230), and an evidentiary hearing was conducted on August 3, 2021 (Doc. 279; Doc. 317) and continued on September 13, 2021 (Doc. 297; Doc. 314).  Your affiant, BPD Homicide Detective Timothy Rooney ("Det. Rooney"), and two of CLARK's children (T.T. and S.S.) testified at the hearing.  (Doc. 314; Doc. 317.)  CLARK and the government submitted post-hearing briefing (Doc. 337; Doc. 338; Doc. 341; Doc. 342), and oral argument was held on March 24, 2022 (Doc. 350).  Judge Wolford denied CLARK's motion to suppress her statements made to law enforcement and the evidence seized from her cell phone on October 9, 2019 (Doc. 360).

48.    During her October 9, 2019 interview, all of CLARK's statements were material to the FBI's investigation, including all information pertaining to Wilson; all information that CLARK knew pertaining to Wilson's whereabouts on September 15-16, 2019; Wilson's relationship with CLARK, and Wilson's associations with other people, including on September 15-16, 2019; information pertaining to drugs, drug dealing, and marijuana; and any information relating to the murders, arson, N.V.C., firearms, and CLARK's knowledge of any activities on Box Avenue, Roebling Avenue, Tonawanda Street, and/or Potomac Avenue.

49.    During the course of her interview, CLARK made several false, fraudulent, and fictitious material statements to FBI agents and BPD Homicide detectives.  In particular, CLARK stated, contrary to the Google location data, call detail records, and video evidence described above, that after Wilson and CLARK returned from the Meek Mill concert at Darien Lake, Wilson stayed at her 164 Parkridge Avenue residence, and they went to sleep, as follows:

Dailey[18]:    So, you guys get back from the concert, what time?  I think, I think you said earlier like 11:30, midnight-ish.

CLARK:    Something like that.

Dailey:    Okay.

CLARK:    I can't remember exactly what time but it was somewhere around there.

Dailey:    What happened after that?

---

[18] References the undersigned FBI agent.

CLARK:      Nothing we went home.  Came to my house.  I told him we should go
            to his house, I'm like let's go to your house in case you're, you know so,
            you don't get in trouble or whatever and, but we ended up at my house.
            We were hungry.

Dailey:     Okay.

CLARK:      **So, we went to my house where I cooked, Sunday dinner.  And we
            ate and that was it.  Went to sleep.**  Both had to go to work in the
            morning, the next morning.

Dailey:     **So, you went to bed, what'd he do?**

CLARK:      **He went to bed too I believe.**

Dailey:     Okay.

CLARK:      **He went to sleep.  Matter of fact he was laying there watching
            Coparts and I fell asleep, and I woke up to the baby and he was still
            there—it was like maybe a few hours later, but he was sleep.**

                                    \*\*\*

CLARK:      I don't know what he would have told you.  I went home.  He went to
            my house.  I went to bed.  He was there for a minute.

Rooney[19]: There ya go—stop right there.  He was there for a minute.  I don't
            know if you think this is the hi friendly Mr. Tim Rooney—

CLARK:      No I don't.

Rooney:     Because, we have evidence that says different, so it feels like to me
            you're protecting him and I don't understand why you would do this.

CLARK:      I can't protect anyone against something that I don't know anything
            about.  I don't know anything—

---

[19] References BPD Det. Rooney.

Rooney:     For a second ago you just said he was there all night you rolled over and he was there—and then you said he was there for a minute—

CLARK:      **When I went to sleep, he was there**, so this is what I am saying.  If he went somewhere-- **when I went to sleep, he was there**.  So, if he went somewhere he went somewhere, but I went to sleep.  If was somewhere else, if he went—**like I said I, I, he was with me.  He was, I went to sleep, he was there when I went to sleep.  When I woke up, he was there.  He went to work the next morning.**

Dailey:     So, what time do you think you went to sleep at?

CLARK:      **I went to sleep at like maybe, I don't know maybe about 12:10, 12:30 I went to sleep.**

Dailey:     And what time do you think you slept until?

CLARK:      Probably 'til about, I can't, I'm not sure.  I know it was, it wasn't long.  It was about a few hours because I got up to go to the bathroom.  And it was probably – it was in the middle of the night, I am not sure exactly.

Dailey:     Okay.  What, what time did he get back that night?

CLARK:      **I don't know.  I don't remember him being gone.**

Dailey:     Okay.

CLARK:      Like he said, if he left, he left when I was sleep.

                                  ***

Rooney:     But you're telling me you might have went to bed at 12:30, I understand you don't—

CLARK:       I said I can't exactly, I couldn't even tell you exactly what time we left the concert.  I said that too.  I don't know exactly what time it was over.  What time, you know, I don't know exactly, but I know—

Rooney:      Okay.

CLARK:       **Right after we got home.  Like maybe a half hour like after we ate, went in the bed, he was watching Coparts.  He watch Coparts on YouTube all the time.  So, he was watching that, I fell asleep.**

Rooney:      Okay.

CLARK:       I was sleep.

                                                     ***

Stephany[20]:  **Well, not only that but, I know you said when you came back from the concert you retired – you went to bed.  I heard you say you went to bed and he was there and when you woke up, he was there.**

CLARK:       **He was there.**

Stephany:    But he wasn't.

CLARK:       **He was sleep.**

Stephany:    **Because we have him on camera at 12:10 in the morning on the 15th going into the 16th, which was Sunday into the Monday after the Meek Mill concert—**

CLARK:       **Hmm.**

---

[20] Refers to BPD Homicide Detective Adam Stephany.

| | |
|---|---|
| Stephany: | **— and he didn't leave Box until 5 a.m.  There's no way possible you woke up in the middle of the night and rolled over and that he was laying there.** |
| CLARK: | **When I got up, to use the bathroom, he was there.  He was in the bed with me.** |

***

| | |
|---|---|
| Winters: | You remember when he came home that day? |
| CLARK: | What day?  The day of the concert? |
| Winters: | When you woke up that morning, he was next to you? |
| CLARK: | hmm. |
| Winters: | Did he smell like smoke? |
| CLARK: | No. |

50.     CLARK's October 9, 2019, statements described above, including those which are bolded for emphasis, are false, fictitious, or fraudulent, were knowingly and willfully made, and were material to the FBI's investigation.

## CONCLUSION

51.     I submit that, based on the evidence described in this affidavit, there is probable cause to believe that CLARK violated 18 U.S.C. §§ 4 and 1001(a)(2).

**WHEREFORE,** based on the foregoing, I submit there is probable cause to believe that, beginning in or about September 15, 2019, the exact date being unknown, and continuing until on or about October 9, 2019, in the Western District of New York, DESHEMA CLARK committed violations of 18 U.S.C. §§ 4 [misprision of a felony] and 1001(a)(2) [making false statements].

CHRISTOPHER DAILEY
FBI Special Agent

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d) on January 20, 2023.

HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge
Western District of New York

EXHIBIT A

# *IN THE DISTRICT COURT OF THE UNITED STATES*

## *for the Western District of New York*

---

**THE UNITED STATES OF AMERICA**

*-vs-*

**DEANDRE WILSON a/k/a D**

**INDICTMENT
19-CR-155-W**



### COUNT 1

#### (Narcotics Conspiracy)

Beginning in or about 2014, the exact date being unknown, and continuing until on or about September 25, 2019, in the Western District of New York, and elsewhere, the defendant, **DEANDRE WILSON a/k/a D**, and Jariel Cobb a/k/a Doobie a/k/a Black, James Reed a/k/a Fatts, Jahaan McDuffie a/k/a Wanka, Destenee Bell a/k/a K, and Deshema Clark, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown, to commit the following offenses, that is,

    a.    to possess with intent to distribute, and to distribute,

        (i)    5 kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance;

        (ii)    1 kilogram or more of a mixture and substance containing heroin, a Schedule I controlled substance;

     (iii)    100 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance; and,

     (iv)    butyryl fentanyl, a Schedule I controlled substance;

in violation of Title 21, United States Code, Sections 841(a)(l), 841(b)(1)(A), 841(b)(1)(B), and 841(b)(1)(C); and,

     b.    to use and maintain a place for the purpose of manufacturing, distributing, and using heroin, butyryl fentanyl and marijuana, Schedule I controlled substances, and cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 856(a)(1).

**All in violation of Title 21, United States Code, Section 846.**

## COUNT 2

### (Hobbs Act Conspiracy)

Between on or about September 15, 2019, and on or about September 16, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D**, and Jariel Cobb a/k/a Doobie a/k/a Black, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown, to obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in particular, the robbery of personal property, including cocaine, cellular telephones, and a white Chrysler Pacifica minivan bearing Florida license plate KBYR32, from Miguel Anthony Valentin-Colon,

Nicole Marie Merced-Plaud, and Dhamyl Roman-Audiffred, individuals engaged in the unlawful possession and distribution of controlled substances, including cocaine.

**All in violation of Title 18, United States Code, Section 1951(a).**

## COUNT 3

### (Hobbs Act Robbery)

On or about September 15, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D,** and Jariel Cobb a/k/a Doobie a/k/a Black, did unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect, commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in particular, the robbery of personal property, including cocaine, cellular telephones, and a white Chrysler Pacifica minivan bearing Florida license plate KBYR32, from, and in the presence of, Miguel Anthony Valentin-Colon, Nicole Marie Merced-Plaud, and Dhamyl Roman-Audiffred, individuals engaged in the unlawful possession and distribution of controlled substances, including cocaine.

**All in violation of Title 18, United States Code, Sections 1951(a) and 2.**

3

## COUNT 4

### (Murder While Engaged in a Narcotics Conspiracy)

On or about September 15, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D,** and Jariel Cobb a/k/a Doobie a/k/a Black, while engaged in an offense punishable under Title 21, United States Code, Section 841(b)(1)(A), that is, the possession with intent to distribute, and distribution, of 5 kilograms or more of a mixture and substance containing cocaine, and conspiracy to do so, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, did intentionally kill and counsel, command, induce, procure, and cause the intentional killing of Miguel Anthony Valentin-Colon, Nicole Marie Merced-Plaud, and Dhamyl Roman-Audiffred, and such killings resulted.

**All in violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.**

## COUNT 5

### (Discharge of a Firearm in Furtherance of a Crime of Violence and Drug Trafficking Crimes)

On or about September 15, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D,** and Jariel Cobb a/k/a Doobie a/k/a Black, during and in relation to drug trafficking crimes, that is, violations of Title 21, United States Code, Sections 841(a)(1), 846, and 848(e)(1)(A), committed in the manner set forth in Counts 1 and 4 of this Indictment, the allegations of which are incorporated herein by reference, and a crime of violence, that is, a violation of Title 18, United States Code, Section 1951(a), committed in the manner set forth in Count 3 of this Indictment, the allegations of which are incorporated herein by reference, for which they may be prosecuted in a court of the United States, did

knowingly and unlawfully use, carry, and discharge a firearm, and in furtherance of said crimes, did knowingly and unlawfully possess and discharge a firearm.

**All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.**

## COUNT 6

### (Discharge of a Firearm Causing Death in Furtherance of a Crime of Violence and Drug Trafficking Crimes)

On or about September 15, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D,** and Jariel Cobb a/k/a Doobie a/k/a Black, during and in relation to drug trafficking crimes, that is, violations of Title 21, United States Code, Sections 841(a)(1), 846, and 848(e)(1)(A), committed in the manner set forth in Counts 1 and 4 of this Indictment, the allegations of which are incorporated herein by reference, and a crime of violence, that is, a violation of Title 18, United States Code, Section 1951(a), committed in the manner set forth in Count 3 of the Indictment, the allegations of which are incorporated herein by reference, for which they may be prosecuted in a court of the United States, did knowingly and unlawfully use, carry, and discharge a firearm, and in furtherance of such crimes, did knowingly and unlawfully possess and discharge a firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), and that, in the course of this violation, the defendant, **DEANDRE WILSON a/k/a D,** and Jariel Cobb a/k/a Doobie a/k/a Black, caused the death of a person through the use of a firearm, which killing was a murder as defined in Title 18, United States Code, Section 1111, in that the defendant, with malice aforethought, did willfully, deliberately, maliciously, and with premeditation, kill Miguel Anthony Valentin-Colon, by shooting him with a firearm.

5

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), 924(j)(1), and 2.

## COUNT 7

### (Discharge of Firearm Causing Death in Furtherance of a Crime of Violence and Drug Trafficking Crimes)

On or about September 15, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D**, and Jariel Cobb a/k/a Doobie a/k/a Black, during and in relation to drug trafficking crimes, that is, violations of Title 21, United States Code, Sections 841(a)(1), 846, and 848(e)(1)(A), committed in the manner set forth in Counts 1 and 4 of this Indictment, the allegations of which are incorporated herein by reference, and a crime of violence, that is, a violation of Title 18, United States Code, Section 1951(a), committed in the manner set forth in Count 3 of the Indictment, the allegations of which are incorporated herein by reference, for which they may be prosecuted in a court of the United States, did knowingly and unlawfully use, carry, and discharge a firearm, and in furtherance of such crimes, did knowingly and unlawfully possess and discharge a firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), and that, in the course of this violation, the defendant, **DEANDRE WILSON a/k/a D**, and Jariel Cobb a/k/a Doobie a/k/a Black, caused the death of a person through the use of a firearm, which killing was a murder as defined in Title 18, United States Code, Section 1111, in that the defendant, with malice aforethought, did willfully, deliberately, maliciously, and with premeditation, kill Nicole Marie Merced-Plaud, by shooting her with a firearm.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), 924(j)(1), and 2.

## COUNT 8

### (Conspiracy to Obstruct Justice)

Beginning on or about September 15, 2019, and continuing to on or September 25, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D**, and Jariel Cobb a/k/a Doobie a/k/a Black and James Reed a/k/a Fatts, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown, to corruptly alter, destroy, mutilate, and conceal objects, that is, the bodies and clothing of Miguel Anthony Valentin-Colon, Nicole Marie Merced-Plaud, and Dhamyl Roman-Audiffred, and a Chrysler Pacifica minivan, with intent to impair their integrity and availability for use in an official proceeding, in violation of Title 18, United States Code, Section 1512(c)(1).

**All in violation of Title 18, United States Code, Section 1512(k).**

## COUNT 9

**(Obstruction of Justice)**

Between on or about September 15, 2019, and on or about September 16, 2019, near 111 Tonawanda Street, Buffalo, New York, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D**, and Jariel Cobb a/k/a Doobie a/k/a Black, did corruptly alter, destroy, mutilate, and conceal, and attempt to corruptly alter, destroy, mutilate, and conceal, objects, that is, the bodies and clothing of Miguel Anthony Valentin-Colon and Nicole Marie Merced-Plaud, and a Chrysler Pacifica minivan, with the intent to impair their integrity and availability for use in an official proceeding.

**All in violation of Title 18, United States Code, Sections 1512(c)(1) and 2.**

## COUNT 10

**(Obstruction of Justice)**

Between on or about September 15, 2019, and on or about September 16, 2019, at 225 Box Avenue, Buffalo, New York, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D**, and Jariel Cobb a/k/a Doobie a/k/a Black and James Reed a/k/a Fatts, did corruptly alter, destroy, mutilate, and conceal, and attempt to corruptly alter, destroy, mutilate, and conceal, objects, that is, the body and clothing of Dhamyl Roman-Audiffred, with the intent to impair their integrity and availability for use in an official proceeding.

**All in violation of Title 18, United States Code, Sections 1512(c)(1) and 2.**

## COUNT 11

### (Conspiracy to Use Fire to Commit a Felony)

Between on or about September 15, 2019, and on or about September 16, 2019, in the

Western District of New York, the defendant, **DEANDRE WILSON a/k/a D**, and Jariel

Cobb a/k/a Doobie a/k/a Black and James Reed a/k/a Fatts, did knowingly, willfully, and

unlawfully combine, conspire, and agree together and with others, known and unknown, to

use fire to commit felonies which may be prosecuted in a court of the United States, that is,

obstruction of justice and conspiracy to do so, in violation of Title 18, United States Code,

Sections 1512(k) and 1512(c)(1), committed in the manner set forth in Counts 8, 9, and 10 of

this Indictment, the allegations of which are incorporated herein by reference, each of which

is a felony which may be prosecuted in a court of the United States, in violation of Title 18,

United States Code, Section 844(h).

**All in violation of Title 18, United States Code, Section 844(m).**


## COUNT 12

### (Use of Fire to Commit a Felony)

On or about September 16, 2019, near 111 Tonawanda Street, Buffalo, New York, in

the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D,** and Jariel

Cobb a/k/a Doobie a/k/a Black, did knowingly use fire to commit felonies which may be

prosecuted in a court of the United States, that is, obstruction of justice and conspiracy to do

so, in violation of Title 18, United States Code, Sections 1512(k) and 1512(c)(1), committed

in the manner set forth in Counts 8 and 9 of this Indictment, the allegations of which are

incorporated herein by reference.

**All in violation of Title 18, United States Code, Sections 844(h) and 2.**

## COUNT 13

### (Use of Fire to Commit a Felony)

Between on or about September 15, 2019, and on or about September 16, 2019, at 225 Box Avenue, Buffalo, New York, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D**, and Jariel Cobb a/k/a Doobie a/k/a Black and James Reed a/k/a Fatts, did knowingly use fire to commit felonies which may be prosecuted in a court of the United States, that is, obstruction of justice and conspiracy to do so, in violation of Title 18, United States Code, Sections 1512(k) and 1512(c)(1), committed in the manner set forth in Counts 8 and 10 of this Indictment, the allegations of which are incorporated herein by reference.

**All in violation of Title 18, United States Code, Sections 844(h) and 2.**

## COUNT 14

### (Conspiracy to Damage and Destroy a Vehicle Used in Interstate Commerce by Fire)

Between on or about September 15, 2019, and on or about September 16, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D**, and Jariel Cobb a/k/a Doobie a/k/a Black, did knowingly, willfully, and unlawfully combine, conspire, and agree together and with others, known and unknown, to maliciously damage and destroy by means of fire, a vehicle, that is, a Chrysler Pacifica minivan, bearing Florida license plate KBYR32, used in interstate commerce and in an activity affecting interstate and foreign commerce, in violation of Title 18, United States Code, Section 844(i).

**All in violation of Title 18, United States Code, Section 844(n).**


## COUNT 15

### (Damaging and Destroying a Vehicle Used in Interstate Commerce by Fire)

On or about September 16, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D,** and Jariel Cobb a/k/a Doobie a/k/a Black, did maliciously damage and destroy, and attempt to damage and destroy, by means of fire, a vehicle, that is, a Chrysler Pacifica minivan, bearing Florida license plate KBYR32, used in interstate commerce and in an activity affecting interstate and foreign commerce.

**All in violation of Title 18, United States Code, Sections 844(i) and 2.**

## COUNT 16

### (Maintaining a Drug-Involved Premises)

Between in or about September of 2019, the exact date being unknown, and on or about October 9, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D,** and Deshema Clark, did knowingly, intentionally, and unlawfully use and maintain a place, that is, the premises at 164 Parkridge Avenue, Buffalo, New York, for the purpose of manufacturing, distributing, and using marijuana, a Schedule I controlled substance.

**All in violation of Title 21, United States Code, Section 856(a)(1) and Title 18, United States Code, Section 2.**

## COUNT 17

### (Possession with Intent to Distribute Marijuana)

On or about October 9, 2019, in the Western District of New York, the defendant, **DEANDRE WILSON a/k/a D,** and Deshema Clark, did knowingly, intentionally, and unlawfully possess with intent to distribute marijuana, a Schedule I controlled substance.

**All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D) and Title 18, United States Code, Section 2.**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

      v.

DEANDRE WILSON a/k/a D,

        Defendant.

**VERDICT SHEET**

1:19-CR-00155-EAW

*(stamp: UNITED STATES DISTRICT COURT FILED NOV 0 3 2022 MARY C. LOEWENGUTH, CLERK WESTERN DISTRICT OF NY)*

**COUNT ONE**
**(Narcotics Conspiracy)**

1.    As to Count One, we unanimously find defendant DEANDRE WILSON:

Guilty __✓__      Not Guilty _____

*If you answered "Guilty," proceed to Question 2.*
*If you answered "Not Guilty," proceed to Question 8 (Count Two).*

2.    We unanimously find as to defendant DEANDRE WILSON that the conspiracy in Count One had an objective of possession with the intent to distribute, or the distribution of, a mixture and substance containing cocaine:

Proven __✓__      Not Proven _____

*If you answered "Proven," proceed to Question 3.*
*If you answered "Not Proven," proceed to Question 4.*

3.    We unanimously find as to defendant DEANDRE WILSON that the following amount of cocaine was involved in the conspiracy charged in Count One (*please check only one*):

    __✓__ 5 kilograms or more

    _____ 500 grams or more but less than 5 kilograms

    _____ less than 500 grams

*Proceed to Question 4.*

- 1 -

4.   We unanimously find as to defendant DEANDRE WILSON that the conspiracy in Count One had an objective of possession with the intent to distribute, or the distribution of, a mixture and substance containing <u>heroin</u>:

Proven _____✓_____          Not Proven _____

*If you answered "Proven," proceed to Question 5.*
*If you answered "Not Proven," proceed to Question 6.*


5.   We unanimously find as to defendant DEANDRE WILSON that the following amount of <u>heroin</u> was involved in the conspiracy charged in Count One (*please check only one*):

___✓___ 1 kilogram or more

_____ 100 grams or more but less than 1 kilogram

_____ less than 100 grams

*Proceed to Question 6.*


6.   We unanimously find as to defendant DEANDRE WILSON that the conspiracy in Count One had an objective of possession with the intent to distribute, or the distribution of, a mixture and substance containing <u>marijuana</u>:

Proven _____✓_____          Not Proven _____

*If you answered "Proven," proceed to Question 7.*
*If you answered "Not Proven," proceed to Question 8 (Count Two).*

- 2 -

7.   We unanimously find as to defendant DEANDRE WILSON that the following amount of <u>marijuana</u> was involved in the conspiracy charged in Count One (*please check only one*):

___✓___   100 kilograms or more

_____   50 kilograms or more but less than 100 kilograms

_____   less than 50 kilograms

*Proceed to Question 8 (Count Two).*

## COUNT TWO
**(Hobbs Act Conspiracy)**

8.   As to Count Two, we unanimously find defendant DEANDRE WILSON:

Guilty _____      Not Guilty __✓___

*Proceed to Question 9 (Count Three).*

## COUNT THREE
**(Hobbs Act Robbery)**

9.   As to Count Three, we unanimously find defendant DEANDRE WILSON:

Guilty __✓___      Not Guilty _____

*Proceed to Question 10 (Count Four).*

## COUNT FOUR
**(Murder While Engaged in a Narcotics Conspiracy)**

10.   As to Count Four, we unanimously find defendant DEANDRE WILSON:

Guilty __✓___      Not Guilty _____

*Proceed to Question 11 (Count Five).*

- 3 -

## COUNT FIVE
### (Discharge of a Firearm in Furtherance of a Crime of Violence and Drug Trafficking Crimes)

11.   As to Count Five, we unanimously find defendant DEANDRE WILSON:

Guilty ___✓___        Not Guilty_____

*If you answered "Guilty," proceed to Question 12.*
*If you answered "Not Guilty," proceed to Question 14 (Count Six).*


12.   As to Count Five, we unanimously find that the allegation that the defendant DEANDRE WILSON did discharge a firearm during and in relation to, and in furtherance of, a crime of violence or drug trafficking crime is:

Proven ___✓___        Not Proven _____

*Proceed to Question 13.*


13.   As to Count Five, we unanimously find that the defendant DEANDRE WILSON engaged in the commission of the following predicate crimes (*check all that apply*):

___✓___ Narcotics Conspiracy as charged in Count One

___✓___ Hobbs Act Robbery as charged in Count Three

___✓___ Murder While Engaged in a Narcotics Conspiracy as charged in Count Four

*Proceed to Question 14 (Count Six).*

## COUNT SIX
### (Discharge of a Firearm Causing Death in Furtherance of a Crime of Violence and Drug Trafficking Crimes)

14.    As to Count Six, we unanimously find defendant DEANDRE WILSON:

Guilty __✓__        Not Guilty _____

*If you answered "Guilty," proceed to Question 15.*
*If you answered "Not Guilty," proceed to Question 16 (Count Seven).*

15.    As to Count Six, we unanimously find that the defendant DEANDRE WILSON engaged in the commission of the following predicate crimes (*check all that apply*):

__✓__ Narcotics Conspiracy as charged in Count One

__✓__ Hobbs Act Robbery as charged in Count Three

__✓__ Murder While Engaged in a Narcotics Conspiracy as charged in Count Four

*Proceed to Question 16 (Count Seven).*

## COUNT SEVEN
### (Discharge of Firearm Causing Death in Furtherance of a Crime of Violence and Drug Trafficking Crimes)

16.    As to Count Seven, we unanimously find defendant DEANDRE WILSON:

Guilty __✓__        Not Guilty _____

*If you answered "Guilty," proceed to Question 17.*
*If you answered "Not Guilty," proceed to Question 18 (Count Eight).*

17. As to Count Seven, we unanimously find that the defendant DEANDRE WILSON engaged in the commission of the following predicate crimes (*check all that apply*):

   ✓ Narcotics Conspiracy as charged in Count One

   ✓ Hobbs Act Robbery as charged in Count Three

   ✓ Murder While Engaged in a Narcotics Conspiracy as charged in Count Four

*Proceed to Question 18 (Count Eight).*

## COUNT EIGHT
### (Conspiracy to Obstruct Justice)

18. As to Count Eight, we unanimously find defendant DEANDRE WILSON:

Guilty ✓    Not Guilty _____

*Proceed to Question 19 (Count Nine).*

## COUNT NINE
### (Obstruction of Justice)

19. As to Count Nine, we unanimously find defendant DEANDRE WILSON:

Guilty ✓    Not Guilty _____

*Proceed to Question 20 (Count Ten).*

## COUNT TEN
### (Obstruction of Justice)

20. As to Count Ten, we unanimously find defendant DEANDRE WILSON:

Guilty ✓    Not Guilty _____

*Proceed to Question 21 (Count Eleven).*

- 6 -

### COUNT ELEVEN
### (Conspiracy to Use Fire to Commit a Felony)

21.    As to Count Eleven, we unanimously find defendant DEANDRE WILSON:

Guilty __✓__      Not Guilty _____

*Proceed to Question 22 (Count Twelve).*


### COUNT TWELVE
### (Use of Fire to Commit a Felony)

22.    As to Count Twelve, we unanimously find defendant DEANDRE WILSON:

Guilty __✓__      Not Guilty _____

*Proceed to Question 23 (Count Thirteen).*


### COUNT THIRTEEN
### (Use of Fire to Commit a Felony)

23.    As to Count Thirteen, we unanimously find defendant DEANDRE WILSON:

Guilty __✓__      Not Guilty _____

*Proceed to Question 24 (Count Fourteen).*


### COUNT FOURTEEN
### (Conspiracy to Damage and Destroy a Vehicle Used
### In Interstate Commerce by Fire)

24.    As to Count Fourteen, we unanimously find defendant DEANDRE WILSON:

Guilty __✓__      Not Guilty _____

*Proceed to Question 25 (Count Fifteen).*

## COUNT FIFTEEN
### (Damaging and Destroying a Vehicle Used In Interstate Commerce by Fire)

25.    As to Count Fifteen, we unanimously find defendant DEANDRE WILSON:

Guilty _____✓_____          Not Guilty _____

*Proceed to Question 26 (Count Sixteen).*

## COUNT SIXTEEN
### (Maintaining a Drug-Involved Premises)

26.    As to Count Sixteen, we unanimously find defendant DEANDRE WILSON:

Guilty _____          Not Guilty __✓____

*Proceed to Question 27 (Count Seventeen).*

## COUNT SEVENTEEN
### (Possession with Intent to Distribute Marijuana)

27.    As to Count Seventeen, we unanimously find defendant DEANDRE WILSON:

Guilty __✓____          Not Guilty _____

## GO TO THE NEXT PAGE,
## SIGN THE VERDICT SHEET,
## AND STOP AND REPORT YOUR VERDICT

- 8 -

I CERTIFY THE ABOVE VERDICT TO BE TRUE AND ACCURATE.

Dated:  November  3 , 2022

_____
FOREPERSON